1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10

11  SALOME A. JACOB,                    )      No. CV 07-6118-RC
                                        )
12            Plaintiff,                )
                                        )      OPINION AND ORDER
13       v.                             )
                                        )
14  MICHAEL J. ASTRUE,                  )
    Commissioner of Social Security,    )
15                                      )
              Defendant.                )
16  _____)

17

18       Plaintiff Salome A. Jacob filed a complaint on September 20,

19  2007, seeking review of the Commissioner's decision denying her

20  application for disability benefits.  The Commissioner answered the

21  complaint on March 5, 2008, and the parties filed a joint stipulation

22  on April 17, 2008.

23

24                                **BACKGROUND**

25                                     **I**

26       On September 29, 2004, plaintiff applied for disability benefits

27  under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423,

28  claiming an inability to work since March 18, 2004, due to heart

1  surgery.  Certified Administrative Record ("A.R.") 43-47, 54.  The

2  plaintiff's application was initially denied on January 4, 2005, and

3  was denied again on June 14, 2005, following reconsideration.  A.R.

4  29-34, 38-40.  The plaintiff then requested an administrative hearing,

5  which was held before Administrative Law Judge Robert A. Evans ("the

6  ALJ") on October 4, 2006.  A.R. 41-42, 259-71.  On October 25, 2006,

7  the ALJ issued a decision finding plaintiff is not disabled.  A.R. 10-

8  21.  The plaintiff appealed this decision to the Appeals Council,

9  which denied review on May 7, 2007.  A.R. 5-9.

10

11                                II

12      The plaintiff, who was born on February 25, 1954, is currently 54

13  years old.  A.R. 43.  She had 10 years of schooling in the

14  Phillippines, and has previously worked as a food service worker and a

15  housekeeper.  A.R. 50-52, 54-55, 58, 104, 262-64.

16

17      Between May 10, 2003, and October 12, 2004, plaintiff received

18  treatment from Antonio D. Ramos, M.D., who diagnosed her with chest

19  pain and coronary artery disease, among other conditions.  A.R. 146-

20  75.  On March 24, 2004, plaintiff underwent a treadmill stress test,

21  which was "markedly positive" for exercise-induced ischemia[1] and the

22  development of chest discomfort.  A.R. 139-43.  Dr. Ramos referred

23  plaintiff to Samuel Dacanay, M.D., who examined her on March 26, 2004,

24  diagnosed her with chest pain and coronary artery disease, and

25  _____

26      [1]  Ischemia is a "deficiency of blood in a part, usually due
27  to functional constriction or actual obstruction of a blood
   vessel."  Dorland's Illustrated Medical Dictionary, 920 (29th ed.
28  2000).

                                 2

1  scheduled her for a diagnostic cardiac catheterization.  A.R. 197-200.

2

3       On March 31, 2004, Dr. Dacanay performed a cardiac

4  catheterization on plaintiff, which revealed significant left main

5  coronary artery stenosis with as high as an 80-90% proximal blockage,

6  and right coronary artery stenosis in the 80% range.  A.R. 107-10.

7  That same day, Carlos E. Moreno-Cabral, M.D., examined plaintiff,

8  diagnosed her with left main coronary artery disease and right

9  coronary artery stenosis, and scheduled her for coronary artery bypass

10 surgery, which took place on April 2, 2004.  A.R. 105, 109-10.

11

12      On April 12, 2004, Dr. Dacanay reported plaintiff was doing well

13 postoperatively, but she should not return to work for two months.

14 A.R. 196.  On June 7, 2004, plaintiff complained she was experiencing

15 left arm and leg numbness and also had left-sided chest discomfort and

16 fatigue.  A.R. 195.  Chest x-rays taken the same day showed

17 cardiomegaly[2] and medial opacity of the left lung base that was either

18 atelectasis[3] or scarring.  A.R. 201.  On June 21, 2004, plaintiff had

19 a treadmill stress test, which was negative for exercise-induced

20 ischemia, and during which plaintiff reported no symptoms although

21 postoperative septal hypokinesis[4] was noted.  A.R. 136-38.  On

22 _____

23      [2]  Cardiomegaly is "hypertrophy [the enlargement or
   overgrowth] of the heart."  Dorland's Illustrated Medical
24 Dictionary at 287, 859.

25      [3]  Atelectasis is an "incomplete expansion of a lung or a
   portion of a lung; it may be a primary (congenital), secondary,
26 or otherwise acquired condition."  Id. at 166.

27
        [4]  Hypokinesis is "abnormally decreased mobility[,] . . .
28 motor function or activity."  Dorland's Illustrated Medical

June 28, 2004, plaintiff was doing better, but complained of left shoulder, back, and left leg discomfort.  A.R. 194.  On February 5, 2005, Dr. Dacanay noted plaintiff was doing well without any complaints except for a persistent cough, and plaintiff was "stable from the cardiac standpoint. . . ."  A.R. 188.

Postoperatively, plaintiff also received ongoing treatment from Dr. Ramos, who, on April 26, 2004, opined plaintiff's disability was total and permanent.  A.R. 153.  On May 24, 2004, Dr. Ramos further opined plaintiff has a "[m]oderate limitation of functional capacity" but is "capable of clerical/administrative (sedentary) activity[,]" i.e., lifting a maximum of 10 pounds and occasionally lifting and/or carrying articles.  A.R. 451.

On December 3, 2004, Pedro Eva, M.D., examined plaintiff, noted she appeared to have recovered well from her heart surgery, and his examination findings were generally normal.  A.R. 176-79.  Dr. Eva opined plaintiff could perform "medium to light . . . functional activities of daily living[,]" meaning she can lift approximately 50 pounds occasionally and 20 pounds frequently and stand and walk for six hours in an eight-hour day with no other limitations.  Id.

On June 9, 2005, Antoine Cazin, M.D., examined plaintiff and concluded her coronary artery disease was well-controlled, and plaintiff no longer needed nitroglycerin.  A.R. 212.  Dr. Cazin noted plaintiff's complaints of fatigue were "understandable since she had

Dictionary at 864.

4

1  heart surgery 13 months ago[,]"; nevertheless, he was of the opinion
2  that plaintiff was "probably moderately limited to do any work-related
3  activity and she could not do any sustained effort."  A.R. 208, 212.

5      Between September 23, 2005, and September 19, 2006, Alberto V.
6  Natividad, M.D., treated plaintiff.  A.R. 239-43, 245-52.  On
7  September 24, 2006, Dr. Natividad noted plaintiff was experiencing
8  chest pain and heaviness with exertion and was easily fatigued, and
9  Dr. Natividad was of the opinion that plaintiff's symptoms were severe
10  enough to interfere with her attention and concentration and she had a
11  "moderate" limitation in her ability to deal with work-related stress.
12  A.R. 239-43.  Dr. Natividad further opined plaintiff: can occasionally
13  lift and carry less than 10 pounds, but never more than that amount;
14  can sit for at least 6 hours in an 8-hour work day and more than two
15  hours at a time; can stand and/or walk for about 2 hours in an 8-hour
16  work day; can stand for 1 hour at a time; can walk approximately 2
17  blocks without rest; and can bend and twist for approximately 10% of
18  the day.  A.R. 239-43, 245-52.  Furthermore, Dr. Natividad opined
19  plaintiff would sometimes need to take unscheduled breaks during work
20  and, when sitting, she would need to elevate her legs about 2 feet for
21  approximately 30% of the work day; however, she would miss less than
22  one day of work a month due to her condition.  A.R. 241, 243.

24                           **DISCUSSION**
25                              **III**
26      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
27  review the Commissioner's decision denying plaintiff disability
28  benefits to determine if his findings are supported by substantial

1  evidence and whether the Commissioner used the proper legal standards

2  in reaching his decision.  Carmickle v. Comm'r, Soc. Sec. Admin., 533

3  F.3d 1155, 1159 (9th Cir. 2008); Tommasetti v. Astrue, 533 F.3d 1035,

4  1038 (9th Cir. 2008).

5

6      "In determining whether the Commissioner's findings are supported

7  by substantial evidence, [this Court] must review the administrative

8  record as a whole, weighing both the evidence that supports and the

9  evidence that detracts from the Commissioner's conclusion." Reddick

10 v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,

11 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can

12 reasonably support either affirming or reversing the decision, [this

13 Court] may not substitute [its] judgment for that of the

14 Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007),

15 cert. denied, 128 S. Ct. 1068 (2008); Lingenfelter v. Astrue, 504 F.3d

16 1028, 1035 (9th Cir. 2007).

17

18     The claimant is "disabled" for the purpose of receiving benefits

19 under the Act if she is unable to engage in any substantial gainful

20 activity due to an impairment which has lasted, or is expected to

21 last, for a continuous period of at least twelve months.  42 U.S.C. §

22 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden

23 of establishing a prima facie case of disability." Roberts v.

24 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

25 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

26

27     The Commissioner has promulgated regulations establishing a five-

28 step sequential evaluation process for the ALJ to follow in a

disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since March 18, 2004, the alleged onset date. . . ." (Step One).  The ALJ then found plaintiff "has the following severe impairment: status post coronary artery bypass grafting times three" (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  Finally, the ALJ concluded plaintiff can perform her past relevant work as a hotel cleaner; therefore, she is not disabled.  (Step Four).

IV

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC "to lift and carry 50 pounds occasionally and 20 pounds frequently, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday."  A.R. 15.  However, plaintiff contends this finding is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Drs. Natividad and Cazin and erroneously determined she was not a credible witness.

**A.   Physicians' Opinions:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001).  Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  Reddick, 157 F.3d at 725; Tommasetti, 533 F.3d at 1041.  Similarly, even if controverted, the ALJ must provide specific and legitimate reasons supported by

8

1   substantial evidence in the record to reject the opinion of an

2   examining physician.  _Ryan_, 528 F.3d at 1198; _Widmark v. Barnhart_, 454

3   F.3d 1063, 1066 (9th Cir. 2006).

4

5        Dr. Natividad, as set forth above, was of the opinion plaintiff

6   is limited in her ability to perform work-related activities.

7   However, the ALJ rejected Dr. Natividad's opinion "because his

8   assessment is not consistent with the treatment and consulting records

9   and objective findings."  A.R. 18.  An ALJ may properly reject a

10  treating or examining physician's opinion that is inconsistent with

11  the medical record, _Batson v. Comm'r of the Soc. Sec. Admin._, 359 F.3d

12  1190, 1195 (9th Cir. 2004); _Morgan v. Comm'r of the Soc. Sec. Admin._,

13  169 F.3d 595, 602 (9th Cir. 1999), as the ALJ did here.  Specifically,

14  the ALJ found "the records show that the claimant made a good recovery

15  after the heart surgery in March 2004, with no objective evidence of

16  any complications or significant residuals."  A.R. 18.  In fact, when

17  treating cardiologist Dr. Dacanay last examined plaintiff on

18  February 5, 2005, he noted plaintiff was doing well without cardiac

19  complaints and was "stable from the cardiac standpoint. . . ."  A.R.

20  188.  Similarly, on December 3, 2004, examining physician Dr. Eva

21  found plaintiff had recovered well from her heart surgery, and his

22  examination findings were generally normal, and examining physician

23  Dr. Cazin likewise found plaintiff's coronary artery disease was well-

24  controlled, and she did not need nitroglycerin any more.  Thus, this

25  reason for rejecting Dr. Natividad's opinion is supported by

26  substantial evidence in the record.  _Batson_, 359 F.3d at 1195; _Morgan_,

27  169 F.3d at 602.

28  //

1    An ALJ may also properly reject a treating physician's opinion
2    that is clearly inconsistent with his treating notes.  Tommasetti, 533
3    F.3d at 1041; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.
4    2005).  Here, the ALJ found "[t]he clinical findings and objective
5    signs listed by Dr. Natividad in support of his assessment do not
6    indicate any significant impairment or limitations" and "Dr.
7    Natividad's own treatment records show generally normal physical
8    examinations with no significant objective abnormalities."  A.R. 18-
9    19.  Indeed, as the ALJ noted, "[w]hen asked to identify clinical
10   findings and objective signs, Dr. Natividad listed a scar in the chest
11   area, normal sinus rhythm of the heart with no murmurs, good
12   peripheral pulse and blood pressure of 138/80."  A.R. 18, 239.  Thus,
13   this reason for rejecting Dr. Natividad's opinion is also supported by
14   substantial evidence in the record.  See A.R. 239-52.  Since, "the ALJ
15   provided 'specific and legitimate' reasons based on substantial
16   evidence for [his] rejection of [Dr. Natividad's] opinion[,]"
17   Tommasetti, 533 F.3d at 1037, the Court finds no merit to plaintiff's
18   claim that the ALJ failed to properly consider Dr. Natividad's
19   opinions.

20

21   The ALJ did not give any weight to Dr. Cazin's opinion that
22   plaintiff is "probably moderately limited to do any work-related
23   activity and she could not do any sustained effort[,]" A.R. 212,
24   "because it was based solely on the [plaintiff's] complaint of
25   fatigue, without objective support, as the physical examination and
26   neurological examination were within normal limits."  A.R. 19.  This
27   finding is based on substantial evidence since the record clearly
28   shows Dr. Cazin's opinion was based solely on plaintiff's complaints

of fatigue.  See, e.g., A.R. 208 ("At present, the patient states that she is always very tired because of her surgery."), 210 ("She states that she is able to walk for 15 minutes, then she needs to stop because she is tired.  For the same reason, she can stand only 15 minutes."), 212 ("[S]he states that she is very tired and this is understandable since she had heart surgery 13 months ago.").  When a physician's opinion of disability is "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations[,]'" that opinion "may be disregarded where those complaints have been 'properly discounted.'"  Morgan, 169 F.3d at 602 (citations omitted); Tommasetti, 533 F.3d at 1041.  Here, as discussed below, the ALJ's determination that plaintiff was not credible is supported by substantial evidence in the record; therefore, the ALJ provided a specific and legitimate reason supported by substantial evidence in the record for discounting Dr. Cazin's opinion that plaintiff is disabled.  Ibid.

   **B.   Credibility:**

   The plaintiff testified at the administrative hearing that since the heart surgery on April 2, 2004, she is unable to work because she easily gets tired, experiences numbness on her left side, and sometimes experiences chest pain.  A.R. 264-68, 270.  Once a claimant has presented objective evidence that she suffers from an impairment that could cause pain or other nonexertional limitations,[5] the ALJ may

_____

[5]  "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

1   not discredit the claimant's testimony "solely because the degree of
2   pain alleged by the claimant is not supported by objective medical
3   evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en
4   banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Rather,
5   if the ALJ finds the claimant's subjective complaints are not
6   credible, he "'must provide specific, cogent reasons for the
7   disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)
8   (citations omitted); Orn, 495 F.3d at 635. Furthermore, if there is
9   medical evidence establishing an objective basis for some degree of
10  pain and related symptoms, and no evidence affirmatively suggesting
11  the claimant is malingering, the ALJ's reasons for rejecting the
12  claimant's testimony must be "clear and convincing." Morgan, 169 F.3d
13  at 599; Carmickle, 533 F.3d at 1160.

14

15      Here, the ALJ found plaintiff's complaints were not credible
16  because they were "not consistent with her activities of daily living"
17  -- plaintiff "does housework, grocery shops with her husband because
18  she does not drive, sometimes cleans, watches T.V. and reads
19  magazines, does laundry, cooks, sometimes goes to the park and
20  exercises and walks, goes to church and has no difficulty with
21  personal care." A.R. 20. This finding is supported by substantial
22  evidence in the record, see, e.g., A.R. 63-67, and "is inconsistent
23  with the presence of a condition which would preclude all work
24  activity." Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990);
25  see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("[T]he
26  ALJ articulated adequate reasons for partially rejecting [the
27  claimant's] pain testimony[,]" including that claimant's daily
28  activities, such as her ability "to care for her own personal needs,

1  cook, clean and shop[,]" which suggests "she is quite functional.");

2  Thomas, 278 F.3d at 959 (claimant's daily activities, including

3  cooking, laundry, washing dishes, and shopping, supported a negative

4  credibility finding); Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir.

5  1998) (ALJ properly rejected claimant's subjective pain complaints

6  based, in part, on claimant's testimony that she did laundry, cleaned

7  house, vacuumed, mopped, dusted and shopped for groceries).

8

9      The ALJ also found plaintiff's complaints are out of proportion

10  to the objective evidence, and "are not consistent with her

11  treatment."  A.R. 20.  Specifically, the ALJ cited an "exercise stress

12  test with myocardial scan on June 21, 2004[,]" which "was normal with

13  no evidence of reversible ischemia[,]" A.R. 20, 136-38, as well as Dr.

14  Cazin's conclusion that plaintiff's coronary artery disease was well-

15  controlled.  A.R. 20, 212.  Additionally, the ALJ noted that in

16  February of 2005, "Dr. Dacanay stated [plaintiff] is doing well from a

17  cardiac standpoint and her cardiac condition is stable."  A.R. 20,

18  188.  These findings, all of which are supported by the record, are

19  substantial evidence bolstering the ALJ's adverse credibility

20  determination.  See Carmickle, 533 F.3d at 1161 ("Contradiction with

21  the medical record is a sufficient basis for rejecting the claimant's

22  subjective testimony."); Burch, 400 F.3d at 681 ("Although lack of

23  medical evidence cannot form the sole basis for discounting pain

24  testimony, it is a factor that the ALJ can consider in his credibility

25  analysis.").  Thus, "the ALJ provided 'clear and convincing' reasons

26  //

27  //

28  //

13

1  for rejecting [plaintiff's] testimony as not credible."  <u>Tommasetti</u>,

2  533 F.3d at 1037; <u>Burch</u>, 400 F.3d at 681.

3

4                                **ORDER**

5       IT IS ORDERED that: (1) plaintiff's request for relief is denied;

6  and (2) the Commissioner's decision is affirmed, and Judgment shall be

7  entered in favor of defendant.

8

9  DATE: <u>Sept. 18, 2008</u>              <u>/s/ ROSALYN M. CHAPMAN</u>
                                       ROSALYN M. CHAPMAN
10                                     UNITED STATES MAGISTRATE JUDGE

11  R&R-MDO\07-6118.mdo
    9/18/08

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28